UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

JACOB BLAIR, et al.,                    )
                                        )
          Plaintiffs,                   )
                                        )
     vs.                                )          Case No. 2:15CV00061 ERW
                                        )
CITY OF HANNIBAL, et al.,               )
                                        )
          Defendants.                   )

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant City of Hannibal's Motion for

Judgment on the Pleadings [ECF No. 41].

**I.     BACKGROUND**

   *A.     Procedural History*

Plaintiffs Jacob and Sarah Blair ("Plaintiffs") filed a Class Action Complaint in this

Court on August 25, 2015, against Defendants City of Hannibal ("Hannibal"), Redflex Traffic

Systems, Inc. ("Redflex") and Does 1 through 24 alleging Hannibal's red light camera program

is unconstitutional. [ECF No. 1]. On November 16, 2015, Plaintiffs filed an Amended Class

Action Complaint ("Amended Complaint") against Defendants asserting the following eight

counts: (I) Declaratory Judgment and Request for Injunction pursuant to Missouri Revised

Statute § 527.010 *et seq*; (II) Violation of Plaintiffs' Constitutional Rights under the Fifth and

Fourteenth Amendments of the United States Constitution and Article I § 10 of the Missouri

Constitution; (III) Unjust Enrichment; (IV) Abuse of Process; (V) Civil Conspiracy; (VI) Aiding

and Abetting against Redflex; (VII) Damages for Violation of Missouri Revised Statute §

484.010, *et seq*, against Redflex; and (VIII) Money Had and Received. [ECF No. 16].

On May 5, 2016, Hannibal filed the pending Motion for Judgment on the Pleadings requesting this Court enter a judgment in favor of Hannibal, dismissing Counts I, II, III, IV, V, and VIII of the Amended Complaint. [ECF No. 42]. On May 27, 2016, in response to Hannibal's Motion for Judgment on the Pleadings, Plaintiffs filed a Memorandum in Opposition to the pending motion, requesting the Court deny Hannibal's motion. [ECF No. 49]. Plaintiffs contend their Amended Complaint states, with sufficient factual detail, multiple viable claims against Hannibal for their illegal scheme. [ECF No. 49, p. 1]. Plaintiffs further contend they have contemporaneously filed a Motion for Leave to File a Second Amended Class Action Complaint, which is pending before this Court and, therefore, makes Hannibal's motion moot. [ECF No. 49, pp. 1-2]. To date, irrespective of the Court's inquiry to Plaintiffs as to why the requested filing of a second amended complaint had not been filed, the Court has yet to receive Plaintiffs' Motion for Leave to File a Second Amended Class Action Complaint and therefore, will base its decision on their response filed on May 27, 2016. [ECF No. 49].

B.     *Factual Background*

This Court adopts the following statement of facts as well-pleaded allegations in Plaintiffs' Amended Complaint. *Ginsburg v. Inbev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). On July 9, 2010, Plaintiff Jacob Blair received a Notice of Violation and Citation based on an alleged violation of Ordinance 17-88C ("2010 Ticket"). [ECF No. 16, ¶ 6]; [ECF No. 17-2, p. 4]. The 2010 Ticket was comprised of eight pages of information, including an instructions page. [ECF No. 17-2, p. 5]. The instructions page informed the recipient of the alleged violation and the three different options on how to proceed. [ECF No. 17-2]. Recipient's first option was to pay the fine, thereby pleading guilty to the alleged violation. [ECF No. 17-2, p. 5]. Recipient's second option was to complete and return

2

an affidavit which indicated the recipient was not the driver of the vehicle. [ECF No. 17-2, p. 5]. Recipient's final option was to schedule a hearing, enter a plea of not guilty, and wait for the court to notify him or her, in writing, of the date and time in which he or she was to appear. [ECF No. 17-2, p. 5]. After receipt of the 2010 Ticket, Plaintiff paid the subsequent fine. [ECF No. 16, ¶ 6].

On November 22, 2013, Plaintiff Sarah Blair received a Notice of Violation and Citation based on an alleged violation of ordinance 17-88C ("2013 Ticket").[1]  [ECF No. 16, ¶ 7] [ECF No. 17-3, p. 4]. Plaintiff Sarah Blair's Notice of Violation Citation contained detailed instructions on how to proceed. [ECF No. 17-3]. Contained in the citation was the date of a corresponding hearing, if Plaintiff wished to plead not guilty and contest the violation. [ECF No. 17-3, p. 4]. Along with the hearing date, the notice contained two options for Plaintiff Sarah Blair: (1) plead guilty to the violation and pay the corresponding fine; or (2) fully complete the attached affidavit identifying the actual driver. [ECF No. 17-3, p. 4]. After receipt of the 2013 Ticket, Plaintiff paid the subsequent fine. [ECF No. 16, ¶ 7].

On June 19, 2007, the Hannibal City Council passed Ordinance 4412 which allowed for detection of violations of traffic control ordinances through an automated red light enforcement system.[2] On March 6, 2012, the Hannibal City Council revoked Ordinance 4412 and replaced it with Ordinance 4599 which governed the use of the automated red light enforcement system. On

---

[1] Plaintiff Sarah Blair's 2013 Ticket was slightly different than Plaintiff Jacob Blair's ticket. The Court will address the differences in detail, *infra*.
[2] These facts are not in Plaintiffs' complaint but are contained in the Ordinances. The Court is permitted to take judicial notice of public records and consider them on this motion. *See Blankenship v. Medtronic Inc.*, 6 F.Supp.3d 979, 983 n.1 (E.D. Mo. 2014).

3

November 12, 2013, Hannibal City Council revoked Ordinance 4599 and replaced it with

Ordinance 4652 to govern the use of the automated red light enforcement system.[3]

     Hannibal filed the pending Motion for Judgment on the Pleadings asserting the following

arguments: (1) Count I for declaratory and injunctive relief fails because Plaintiffs have an

adequate legal remedy; (2) Count II fails because Plaintiffs have waived any constitutional

claims they may have had; (3) if Plaintiffs have not waived their constitutional claims, Count II

still fails because Plaintiffs have not pled a constitutional claim which entitles them to relief; (4)

Counts III and VIII of Amended Complaint fail, as a matter of law, because they are barred by

the voluntary payment doctrine; and (5) Counts III, IV, V, and VIII fail, as a matter of law,

because they are barred by the sovereign immunity doctrine. [ECF No. 42].

## II.    STANDARD

     Generally, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same

standard as a 12(b)(6) motion to dismiss. *Ginsburg*, 623 F.3d at 1233 n.3; *Clemons v. Crawford,*

585 F.3d 1119, 1124 (8th Cir. 2009); *Ashley County v. Pfizer,* 552 F.3d 659, 665 (8th Cir. 2009).

The Court must view the allegations in the Complaint liberally and in the light most favorable to

Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (*citing Luney v. SGS*

*Auto. Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)). The Court "must accept the allegations

contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving

party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). A complaint must have "enough

facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in

*Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). To prove the grounds for entitlement of relief, a

---

[3] The Court will refer to the red light system created in the Ordinances and administered by
Hannibal and Redflex as the red light program.

plaintiff must provide more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F.Supp.2d 1137, 1140 (E.D. Mo. 2007).

"[T]he Court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint.'" *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999). Additionally, the Court may consider materials that are "necessarily embraced by the pleadings." *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1152 (D.Minn. 1997); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## III.    DISCUSSION

### A.    *Sovereign Immunity*

Hannibal argues Counts III, IV, V, and VIII fail, as a matter of law, because they are barred by the sovereign immunity doctrine, and Plaintiffs have failed to specifically plead an exception which would waive Hannibal's immunity. [ECF No. 42, p. 7]. Plaintiffs have previously argued Hannibal is not protected under sovereign immunity because its actions were not governmental in nature.[4] [ECF No. 34]. The Court now must determine whether Hannibal is entitled to sovereign immunity and if so, based on the facts pled, whether Hannibal waived its sovereign immunity.[5]

A state may not be sued without its consent. *Kleban v. Morris*, 247 S.W.2d 832, 836 (Mo. 1952). Missouri Revised Statute § 537.600 creates two exceptions to this general rule: (1)

---

[4] For Hannibal's pending motion, Plaintiff's rely on their Second Amended Complaint which has not been filed with the Court and cannot be used to support their legal conclusions.
[5] The Court's analysis follows the same analysis from its ruling on Redflex's Motion for Judgment on the Pleadings, where it determined Hannibal was entitled to sovereign immunity. [ECF No. 38].

injuries resulting from negligent acts by a public employee, out of the operation of motor vehicles, in the course of their employment; and (2) injuries caused by the condition of a public entity's property, if it is established the property was in dangerous condition. This statute solely governs the state's sovereign immunity from liability in tort; however, it does not govern immunity under non-tort theories of recovery. *Kubley v. Brooks*, 141 S.W.3d 21, 29 (Mo. 2004). A state entity may also waive immunity from suit by entering into an express contract. *Id.* at 28. When the State enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses and binds itself to the contractual performance, as if they were a private citizen. *V.S. DiCarlo Const. Co., Inc. v. Missouri*, 485 S.W.2d 52, 54 (Mo. 1972). This does not result in all claims involving contracts as being exempt from the application of sovereign immunity. *State ex rel. Mo. State Highway Patrol v. Atwell*, 119 S.W.3d 188, 190 (Mo. Ct. App. 2003) (*abrogated on other grounds by Kubley v. Brooks*, 141 S.W.3d 21 (Mo. 2004)). A state can also waive sovereign immunity through the purchase of liability insurance. Mo. Rev. Stat. § 537.610; *see also* Mo. Rev. Stat. § 71.185. But, liability of a public entity is the exception to the general rule; thus, a plaintiff must plead specific facts showing his claims are within the exception. *Hummel v. St. Charles City R-3 School Dist.*, 114 S.W.3d 282, 284 (Mo. Ct. App. 2003).[6]

Municipalities are considered entities of the state but are not entitled to sovereign immunity in all circumstances. *Gregg v. City of Kansas City*, 272 S.W.3d 353, 359 (Mo. Ct. App. 2008). They are only entitled to sovereign immunity when engaged in governmental functions. *Richardson v. City of St. Louis*, 293 S.W.3d 133, 136-37 (Mo. Ct. App. 2009).

---

[6] Other exceptions to sovereign immunity can be found in Missouri common law or delineated in statute.  The Court does not discuss these exceptions because they were not raised by either party.

Governmental functions are those performed for the common good of all, unlike proprietary functions, which are performed for the benefit or profit of the municipality as a corporate entity. *Id.* Enforcing laws and ordinances is a governmental function entitling municipalities to immunity from liability. *Gregg*, 272 S.W.3d at 361.

In this matter, the exceptions to sovereign immunity delineated in § 537.600 do not apply, because there has not been any negligent operation of a motor vehicle, or the dangerous condition of public property. The waiver of sovereign immunity by entering an express contract also does not apply because Plaintiffs have not entered into an express contract with Hannibal or Redflex. The only contract is between Redflex and Hannibal and neither party is asserting claims against the other. [ECF No. 17, Ex. 1]. In the Amended Complaint, Plaintiffs allege Hannibal has waived sovereign immunity through the purchase of liability insurance. [ECF No. 16, ¶ 38]. A public entity only waives sovereign immunity through the purchase of liability insurance to the extent of or for the specific purposes covered by the insurance purchased. *Brennan By & Through Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 434 (Mo. Ct. App. 1997). Plaintiffs must allege the existence of liability insurance, as well as allegations insurance covers the claims asserted. *Id.* at 436. Plaintiffs have not done so here. Plaintiffs did not plead any facts which fit into any of the exceptions, effectively leaving Hannibal's sovereign immunity intact. However, despite Plaintiffs lack of pled facts, if Hannibal's enforcement of the red light program is not governmental in nature, it will not be protected under the doctrine of sovereign immunity.

It has consistently been determined the enactment and enforcement of ordinances are governmental functions, which are protected by sovereign immunity. *Gregg*, 272 S.W.3d at 361. Plaintiffs argue Hannibal should not be protected by sovereign immunity because it was not performing a governmental function, but instead, was acting similar to a private citizen or

7

corporation. [ECF No. 34, p. 5]. Plaintiffs support this argument by alleging Hannibal was engaged in a proprietary, non-governmental function because the red light program was purely a money making scheme and also negatively impacted public safety. [ECF No. 34, p. 5].

When determining if an activity is governmental in nature, the finite details of the particular defendant's conduct is often less important than the generic nature of the activity. *State ex re. Bd. of Trustees of City of N. Kansas City Mem'l Hosp v. Russell*, 843 S.W.2d 353, 359 (Mo. 1992). Even if the sole motivation of the local government was profit, the activity can still be governmental. *Id*. In the Amended Complaint, Plaintiffs repeatedly concluded Hannibal's ordinance was purely for revenue and profit; however, they pled no facts to support this proposition. [ECF No. 16, pp. 8-9, 16]. The only fact included was Hannibal and Redflex made over $500,000.00 in revenue from this program, although the cost is lower than the amount collected. [ECF No. 16, ¶ 13]. The contract between Redflex and Hannibal states a flat fee of $39.00 per paid citation will be paid to Redflex. [ECF No. 17-1, p. 25]. Subsequently there are no facts stating how much, in profit, Hannibal made from this program, how much the program costs, or any other facts related to Hannibal's revenue. Plaintiffs have merely provided labels and conclusions for Hannibal's conduct and lack any formulaic recitation of elements to demonstrate Hannibal was not acting in a governmental nature. *Bell Atl. Corp*, 550 U.S. at 555.

The generic nature of the activity at issue is governmental, and with absence of facts to suggest otherwise, the Court must conclude the red light program is a governmental function. Therefore, Hannibal is entitled to sovereign immunity because it was engaged in a governmental function and Plaintiffs' claims do not fall under an exception to sovereign immunity. Accordingly, Count III for unjust enrichment, Count IV for abuse of power, Count V for civil conspiracy, and Count VIII for money had and received shall be dismissed.

8

B.    *Constitutional Claims*

In Count II, Plaintiffs argue their Fourteenth Amendment substantive and procedural due process rights have been violated. [ECF No. 49]. Plaintiffs also state Hannibal has deprived them of their Fifth Amendment rights because Hannibal's Ordinances violate their right against self-incrimination, they create an improper rebuttable presumption of guilt, and are criminal in nature. [ECF No. 49]. Hannibal argues the doctrine of waiver should bar any constitutional claims Plaintiffs might have because they did not raise them at the earliest opportunity. [ECF No. 42, p. 9]. Hannibal supports this argument by claiming Plaintiffs accepted the Notice of Violation Citation, paid the fine, and thereby waived any constitutional claims they might possess. [ECF No. 42, p. 9]. It is Plaintiffs' contention they did not have the knowledge or intelligence to understand their constitutional rights had been violated, and, therefore, could not have waived them. [ECF No. 49, p. 4]. Plaintiffs also state they have promptly and appropriately raised their constitutional claims upon the initiation of this action. [ECF No. 49, p. 4].

It is firmly established, a constitutional question must be presented at the earliest possible moment when "good pleadings and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived." *Securities Acceptance Corp. v. Hill*, 326 S.W.2d 65, 66 (Mo. 1959). A party asserting the unconstitutionality of a statute bears the burden of supporting their contention by at least relating the argument to the statute or ordinance with the issue at hand. *Atkins v. Dept. of Building Regulations*, 596 S.W.2d 426, 434 (Mo. 1980). To properly raise a constitutional issue, Plaintiffs are required to: (1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional

9

question throughout the proceedings for appellate review. *Callier v. Dir. of Revenue, State of Mo.*, 780 S.W.2d 639, 641 (Mo. 1989) (*quoting City of Eureka v. Litz*, 658 S.W.2d 519, 521 (Mo. Ct. App. 1983)). The Supreme Court of Missouri has also held the failure to raise a constitutional challenge to a statute in a proceeding before an administrative agency or on review of the agency's decision effectively waives any constitutional claim a plaintiff may have. *City of Chesterfield v. Dir.of Revenue*, 811 S.W.2d 375, 378 (Mo. 1991).

Plaintiffs rely on *State v. Garrette* to support their contention one must have the knowledge and intelligence to appropriately waive a constitutional question. 699 S.W.2d 468 (Mo. Ct. App. 1985). Plaintiffs correctly state "a party objecting to a claim based on a constitutional question must know the grounds for the objection." *Id.* at 482. But Plaintiff incorrectly interpret the *Garrette* court's reasoning and incorrectly apply it to the facts and circumstances in this case. In *Garrette*, the objection referenced is one made by an attorney about jury selection after a jury had been selected, sworn in, and the trial commenced. *Id.* While the facts in *Garrette* support the inference a party must knowingly object at an appropriate time during the trial process, the facts do not support Plaintiffs' contention in this case. The Court fails to see any link between an objection to the selection of jurors and the knowledge of paying a fine for a violation where an individual has been explicitly told by paying the fine they are pleading guilty to the alleged violation.[ECF No. 17, Ex. 2, p. 4]; [ECF No. 17, Ex. 3, p. 4]. Accordingly, the Court finds Plaintiffs' reliance on *Garrette* unpersuasive.

Constitutional violations are waived if not raised at the earliest possible opportunity. *State ex rel. York v. Daugherty*, 969 S.W.2d 223, 224 (Mo. 1998) (*quoting, Adams v. Children's Mercy Hospital*, 832 S.W.2d 898, 907 (Mo. 1992)). In the case at hand, Plaintiffs' earliest opportunity to raise a constitutional claim was to plead not guilty by following the instructions

on their Notice of Violation Citation instructions, and to request a municipal hearing. [ECF No. 17-2, p. 5]. The critical question in determining whether waiver has occurred is, whether the party affected had a reasonable opportunity to raise the unconstitutional act by timely asserting the claim before a court of law. *Callier*, 780 S.W.2d at 641. Plaintiffs had a reasonable opportunity to raise their constitutional issues by following the instructions on their notice of violation citations and requesting a hearing where their constitutional claims could be raised.

In support of Hannibal's contention, it cites and relies on *Edwards v. City of Ellisville*, 426 S.W.3d 644 (Mo. Ct. App. 2013). In *Edwards*, the notice of violations issued by the city expressly informed the alleged violators how to obtain a court hearing should they choose to challenge the violation. *Id.* at 655. The appellate court reasoned none of the plaintiffs in *Edwards* were left to speculate on how they might challenge the ordinance, should they desire to do so. *Id.* Based on the facts of *Edwards*, the appellate court chose to distinguish it from the precedent set in *Hughes v. City of Cedar Rapids*, 112 F.Supp.3d 817 (N.D. Iowa 2015). In *Hughes*, the plaintiffs were required to raise their constitutional claims at the earliest stage, but the court held the administrative hearing, which was presided over by a single police officer, was not the appropriate forum to raise a constitutional issue. *Id.* at 838. The court held an administrative hearing, by a single police officer, did not provide a sufficient forum for a plaintiff to bring his or her constitutional claims, and, therefore, the court was unable to find the plaintiffs waived their claims. *Id.* The factual differences of *Edwards* and *Hughes* greatly strengthened the *Edwards* court's holding because the municipal hearing in *Edwards* provided the plaintiffs with an appropriate venue to raise any constitutional claims at issue. The facts in *Edwards* support the conclusion Plaintiffs, here, had a reasonable opportunity to raise the alleged unconstitutionality of the ordinance, prior to filing their action in this Court. *Id.*

In the present case, Plaintiffs were explicitly notified of the option to plead not guilty. [ECF No. 17-2, p. 4]; [ECF No. 17-3, p. 4]. One set of instructions clearly notified Plaintiff Sarah Blair to appear on the listed court date, unless she wished to plead guilty by paying the fine prior to the hearing. [ECF No. 17-3, p. 4]. In following the clear instructions of the 2010 Ticket, Plaintiff Jacob Blair had the ability to plead not guilty, return the appropriate section of the 2010 Ticket, and wait for the Hannibal Municipal Court to contact him with the corresponding court date. [ECF No. 17-2, p. 4]. Had Plaintiffs followed the instructions on their Notice of Violation Citation, they would have had a fair and reasonable opportunity to present any type of constitutional issues at the municipal court hearing.

By paying the fine and pleading guilty, Plaintiffs waived their right to allege any constitutional violations. Therefore, Plaintiffs' constitutional claims against Hannibal must be dismissed. Hannibal also alleges, even if Plaintiffs have not waived their constitutional claims, Plaintiffs have not pled a constitutional claim which entitles them to relief. Since the Court has held Plaintiffs waived their constitutional claims, the Court does not need to address Hannibal's other constitutional arguments. Accordingly, Count II, for alleged violations of Plaintiffs' constitutional rights, shall be dismissed.

C.    *Injunctive and Declaratory Relief*

Hannibal argues the Court should dismiss Count I for declaratory and injunctive relief because Plaintiffs have an adequate legal remedy. [ECF No. 42, p. 21]. Conversely, Plaintiffs contend declaratory and injunctive relief is appropriate considering the inadequate remedy at law. [ECF No. 49, p. 9]. To maintain an action for declaratory judgment, there must be: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation;

12

(2) a plaintiff with a legally protectable interest at stake, consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law. *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. 2003). At issue in the case at hand is whether or not Plaintiffs had an adequate remedy at law, therefore, the Court will not address the other three elements. A declaratory judgment should be used with caution and it is not to be used and applied where an adequate legal remedy already exists. *State ex rel. Freeway Media, LLC v. City of Kansas City*, 14 S.W.3d 169, 173 (Mo. Ct. App. 2000). The declaratory procedure cannot be used where a different statutory method of review is provided. *Id.*

An injunction is an equitable remedy and equitable relief is only warranted when a plaintiff's legal remedies are inadequate or incomplete. *Home Shopping Club, Inc. v. Roberts Broad Co.*, 989 S.W.2d 174, 180 (Mo. Ct. App. 1998). If a person is challenging a municipal ordinance as invalid, they have an adequate remedy at law by raising the challenge as a defense to the proceedings being carried out against him or her in municipal court. *Id.*

It is Plaintiffs' contention an injunction against Hannibal is appropriate because they do not have an adequate remedy at law. When it is proved the attempted enforcement of an ordinance will result in so many prosecutions the remedy at law is inadequate, then a basis for injunctive relief is established. *Jackson v. City of Kansas City*, 601 S.W.2d 681, 682 (Mo. Ct. App. 1980). Plaintiffs' argument conflates a multiplicity of actions against one plaintiff with a multiplicity of actions against a large number of plaintiffs. *Edwards*, 426 S.W.3d at 657-58. Just as in *Edwards*, Plaintiffs, and the class they seek to represent, are only subject to multiple prosecutions if they continue to be charged with a violation of the ordinance. *Id.* at 658. Continually violating an ordinance and then being subject to prosecution because of the

13

continual violations, does not create a multiplicity of actions contemplated by the Missouri courts. *Id.*; *compare Jackson v. City of Kansas City*, 601 S.W.2d 681, 682 (Mo. Ct. App. 1980) (plaintiff did not face multiplicity of actions when he had been arrested only one time and the facts in the case merely showed that the city intended to enforce the ordinance) with *Bd. of Stationary En'rs v. City of St. Louis*, 212 S.W.2d 454, 458 (Mo. Ct. App. 1948) (plaintiffs were subjected to a multiplicity of actions when ordinance required them to hold a special license to perform their jobs and they were threatened with arrest each day they were found to be working in violation of the ordinance).

Plaintiffs also contend their case is comparable to *Tupper v. City of St. Louis* because, according to Plaintiffs, Hannibal has limited Plaintiffs' opportunities to dispute violations in municipal court. 468 S.W.3d 360 (Mo. 2015). The Court is unpersuaded by this argument because, unlike *Tupper*, Hannibal did not dismiss any proceedings against Plaintiffs. *Id.* at 369. In *Tupper*, the Missouri Supreme Court held, after St. Louis dismissed the case against the plaintiffs, they no longer had an adequate legal remedy because there was no venue  for them to raise their claims. *Id.* But in the case at hand, Plaintiffs were made expressly aware of their option to be heard at a municipal court proceeding and chose not to have a hearing. Therefore, the Court is unpersuaded by Plaintiffs' contention *Tupper* is comparable to the facts at hand.

Plaintiffs have failed to plead facts which establish the enforcement of these ordinances will result in a multiplicity of prosecutions rendering the remedy at law inadequate. Both Plaintiffs, in following the instructions page of their Notice of Violation Citation were entitled to three different options: (1) pay the fine for the alleged offense, thereby pleading guilty; (2) send in a signed affidavit identifying another driver of the vehicle; or (3) plead not guilty and request a municipal court hearing. [ECF No. 17, Exs. 2-3]. It has consistently been maintained,

municipal division proceedings have provided an adequate legal remedy sufficient to preclude a declaratory judgment. *Schaefer v. Koster*, 342 S.W.3d 299, 300 (Mo. 2011). Here, Plaintiffs are afforded the right to choose for themselves whether or not they want to bring any issues in a municipal court hearing. Based on the pleaded facts, Plaintiffs had the ability to be heard before a municipal court, which constitutes an adequate remedy at law, therefore injunctive and declaratory relief are not appropriate. Accordingly, Count I, for declaratory and injunctive relief against the City of Hannibal, will be dismissed.

## IV.    CONCLUSION

In following the above analysis, Count I for declaratory and injunctive relief, Count II for violation of Plaintiffs' constitutional rights, Count III for unjust enrichment, Count IV for abuse of power, Count V for civil conspiracy, and Count VIII for money had and received, of Plaintiffs' Amended Class Action Complaint against Hannibal will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of Hannibal's Motion for Judgment on the Pleadings [ECF No. 41] is **GRANTED**.

**IT IS FURTHER ORDERED** that Counts I, II, III, IV, V, and VIII of Plaintiffs' Amended Class Action Complaint [ECF No. 16] are **DISMISSED**, with prejudice, against Defendant City of Hannibal.

So Ordered this 12th day of July, 2016.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**